Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 50149 | **DATE** | 2/24/2003 |
| **CASE TITLE** | Howell vs. Rock River Training Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's motion for summary judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For purposes of this Memorandum Opinion and Order, this case is consolidated with case number 00 C 50148. For the reasons stated on the attached Memorandum Opinion and Order, defendant's motions for summary judgment in cases 00 C 50148 and 00 C 50149 are granted. These two cases are dismissed in their entirety.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | FEB 24 2002 date docketed | 23 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| X | Mail AO 450 form. | | docketing deputy initials | |
| X | Copy to judge/magistrate judge. | | 2-24-03 date mailed notice | |
| /LC | courtroom deputy's initials | Date/time received in central Clerk's Office | SW mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

MARIA BALDERRAMA, )
 )
    Plaintiff, )
 )
v. ) No. 00 C 50148
 )
ROCK RIVER TRAINING CORP. )
 )
    Defendant. )

---

MARY ANN HOWELL )
 )
    Plaintiff, )
 )
v. ) No. 00 C 50149
 )
ROCK RIVER TRAINING CORP. )
 )
    Defendant. )

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Plaintiff in case number 00 C 50148, Maria Balderrama, has sued her former employer, Rock River Training Corp. ("RRTC"), for denying her a raise in July 1999 because of her national origin (Hispanic), in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq. ("Title VII"). Plaintiff in case number 00 C 50149, Mary Ann Howell, has filed a nearly identical suit, except hers is based on her race (African-American). Because of the many similarities between the two cases and because counsel are the same in both cases, the court has consolidated them for purposes of this memorandum opinion and order. Jurisdiction and

venue are proper based on 42 U.S.C. § 2000e-5(f)(3). RRTC has filed a motion for summary judgment in each case pursuant to Federal Rule of Civil Procedure 56.

## II. BACKGROUND

RRTC is a nonprofit agency that provides educational and vocational services and training, tuition, child care, books, supplies, and other supportive services to qualified low-income persons (referred to as "clients") to help make them employable. (LR 56.1(a) ¶¶ 9-10) As of November 1998 (the importance of this date will become clear shortly), both plaintiffs were working as case managers at RRTC's Rockford office and, as such, were primarily responsible for managing the files of various clients. (Id. ¶¶ 11, 20) Besides Balderrama and Howell, RRTC employed three other case managers in the Rockford office at that time: Bill Stokes (African-American), John Bates (Caucasian), and Mike Johnson (Caucasian). (Id. ¶ 15)

In November 1998, RRTC hired Andrea Sweet as its Program Coordinator, a position that essentially made her the immediate supervisor of all five case managers. (Id. ¶¶ 13-14) Carol Houghtby, RRTC's Executive Director, was in turn Sweet's immediate supervisor. (Id. ¶ 14) To ensure consistency and uniformity in the way the case managers handled their case files, Sweet instituted a number of changes in case management procedure. She outlined some of these changes in a memo given to all the case managers on January 11, 1999. (Id. ¶¶ 28-30) This

-2-

memo generally addressed new procedures for tracking client attendance and communicating with clients about attendance problems. (Id. ¶¶ 33-35) During that same month, on January 21, 1999, Sweet also directed separate memos to each individual case manager, except Stokes, informing him or her of information missing from client files for which that case manager was responsible. (Id. ¶ 36) Throughout her tenure at RRTC, Sweet frequently wrote similar memos about all of the case managers (either directly to the case managers themselves or, sometimes, to Houghtby), documenting their noncompliance with case management procedures; at one time or another, she had disciplined each case manager for not following procedure. (Balderrama LR 56.1(a) ¶¶ 38, 41, 51-52, 54-56, 94, 97, 98, 113-27, 141-51, 156; Howell LR 56.1(a) ¶¶ 38, 50, 53-54, 68-73, 79-82, 98-99, 101-08, 113, 117, 128, 130-31, 143, 148)

In June 1999, RRTC conducted consolidated annual performance evaluations of the five case managers, with Houghtby evaluating them from July 1998 to November 1998 and Sweet doing so from November 1998 to June 1999. (Balderrama LR 56.1(a) ¶ 46) The reviews did not go well for plaintiffs. Both Balderrama and Howell received low marks on their evaluations and, as a result, were denied their annual raises. But plaintiffs were not alone; of the five case managers, only Johnson received a high enough score on the June 1999 performance evaluation to qualify for a raise. (Id. ¶¶ 49, 95; Howell LR 56.1(a) ¶¶ 40, 51)

In their present suits, Balderrama and Howell claim RRTC, and Sweet in particular, gave them poor performance evaluations and, hence, denied each of them a raise, because of their national origin and race, respectively. All parties, however, also have included in their LR 56.1 statements and briefs a number of facts that would be relevant only to a hostile work environment theory, such as various remarks and other incidents involving plaintiffs and Sweet, both before and after the June 1999 evaluations. But to be clear, neither Balderrama nor Howell press any such hostile work environment claim throughout their responses to the summary judgment motions. They instead focus exclusively on the denial of their raises. The court, therefore, will discuss only those facts that might bear on that issue.

### III. **ANALYSIS**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Bennett v. Roberts</u>, 295 F.3d 687, 694 (7th Cir. 2002) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986)). The court's function is not to weigh the evidence but merely determine if there is a genuine issue of fact for trial. See <u>Bennett</u>, 295 F.3d at 694 (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986)). In performing that task, the court views the evidence

and draws all reasonable inferences in the light most favorable to the nonmoving parties. See id.

Conceding they lack any direct evidence of discrimination, plaintiffs proceed under the familiar McDonnell Douglas burden-shifting method of proof. This requires them first to establish prima facie cases of discrimination by demonstrating: (1) they are members of a protected class; (2) they were meeting RRTC's legitimate expectations; (3) they suffered adverse employment actions; and (4) RRTC treated other similarly situated employees more favorably. See Peele v. Country Mut. Ins. Co., 288 F.3d 319, 326 (7th Cir. 2002). If plaintiffs establish their prima facie cases, the burden shifts to RRTC to articulate a legitimate, nondiscriminatory reason for the adverse employment decisions. Once it has done so, the burden shifts back to plaintiffs to rebut the proffered explanation as a pretext, which means one that is dishonest and not merely erroneous. See id.

RRTC admits plaintiffs have met the first and third steps of their prima facie cases and instead contests whether they were meeting RRTC's legitimate expectations and whether any similarly situated non-minority employees were treated more favorably. Alternatively, RRTC also argues that, even assuming plaintiffs have satisfied the prima facie elements, they still are not able to rebut RRTC's proffered reason for denying their raises as a pretext. The court ultimately agrees with RRTC on all three points and takes up each in turn.

A. **Prima Facie Cases**

   1. **Legitimate expectations**

   To begin with, plaintiffs do not at all dispute they each received repeated reminders and warnings, both orally and in writing, for not following Sweet's new policies and procedures. Indeed, besides the January 22, 1999 memo Sweet sent out to all the case managers (except, apparently, Stokes), Sweet wrote numerous memos between November 1998 (when Sweet was hired) and June 30, 1999 (the cut off date for the 1998-1999 performance evaluations) describing individual performance problems with both plaintiffs. Specifically, during that time Sweet wrote at least eleven separate memos addressing Balderrama's failure to follow the new case management procedures while Howell was the subject of an even greater number of similar memos. (Balderrama LR 56.1(a) ¶¶ 38, 52, 54-56, 121-24, 141, 143-47; Howell LR 56.1(a) ¶¶ 79-82, 101-04, 116-17, 130-31, 133, 143, 157) What's more, neither plaintiff argues any of these criticisms were unwarranted - i.e., they both accept they were not, in fact, following Sweet's procedures and directions.

   Sweet naturally considered plaintiffs' repeated failures to follow policy when she performed the annual performance evaluations in June 1999. (Balderrama LR 56.1(a) ¶ 127; Howell LR 56.1(a) ¶ 84) As a result, Sweet ranked both plaintiffs as either "average" or "needs improvement" in almost every category on the evaluation forms. (Balderrama LR 56.1(a) ¶¶ 128-37;

Howell LR 56.1(a) ¶¶ 86-96) When Houghtby then converted these rankings into points, both plaintiffs fell short of the cut-off score needed to receive a raise.

Because plaintiffs effectively admit they were not following the new case management procedures implemented by Sweet, it would seem obvious they were not by any stretch meeting RRTC's legitimate expectations. In response, plaintiffs make a couple of unrelated points. First, they claim they received good performance ratings in the past and "always" received their annual merit-based raises. It is axiomatic, however, that the issue is not plaintiffs' past performance but whether they were performing well at the time of the adverse employment actions. See Peele, 288 F.3d at 329. In addition, prior job performance evaluations do not create a genuine issue of fact when, as here, there has been a substantial alteration in the employees' supervision in the intervening time period. See id.

Second, plaintiffs rely on the deposition testimony of Johnson, who said he felt the work of the minority case managers was not substandard compared with anyone else's and believed Sweet was writing up Balderrama and Howell more than any of the other employees. Needless to say, a coworker's opinion of plaintiffs' job performance is obviously insufficient to show plaintiffs were meeting their employer's legitimate expectations, see id., and Johnson's own belief that Sweet was writing up plaintiffs more than other case managers similarly proves

-7-

nothing.

Finally, plaintiffs argue *all* of the case managers were not keeping up with the new procedures but only the minority case managers (including, of course, Balderrama and Howell) were singled out for their poor performance. This would suggest, although none of the parties have done so, a different approach to analyzing plaintiffs' prima facie cases. Because plaintiffs believe they were "singled out for discipline based on a prohibited factor, it 'makes little sense . . . to discuss whether [they were] meeting [their] employer's reasonable expectations.'" Curry v. Menard, Inc., 270 F.3d 473, 477 (7th Cir. 2001) (quoting Flores v. Preferred Technical Group, 182 F.3d 512, 515 (7th Cir. 1999)) (first alteration in original; remaining alterations added). Instead, "[w]hen a plaintiff produces evidence sufficient to raise an inference that the employer applied its legitimate expectations in a disparate manner, the second and fourth prongs of McDonnell Douglas merge, allowing the plaintiff to establish a prima facie case by establishing that similarly situated employees were treated more favorably." Grayson v. O'Neill, 308 F.3d 808, 818 (7th Cir. 2002).

But even if plaintiffs had developed this argument in any meaningful way, which they have not, the court would reject it out of hand because the minority case managers plainly were *not* singled out. Specifically, plaintiffs completely ignore the fact

-8-

that John Bates, one of the two Caucasian case managers, received his fair share of written memos and warnings from Sweet during the same time frame and was also denied a raise in June 1999 based on his sub par performance evaluation. (Balderrama LR 56.1(a) ¶¶ 54, 115-18, 120, 141, 144-46; Howell LR 56.1(a) ¶¶ 70-73, 75, 99, 101-03) It is further undisputed Sweet followed the same procedure for completing each case manager's performance evaluation. (Howell LR 56.1(a) ¶ 97) Given that Bates, a Caucasian case manager, was treated exactly the same as Balderrama and Howell, plaintiffs cannot claim they were "singled out" because of their national origin or race. See Peters v. Renaissance Hotel Operating Co., 307 F.3d 535, 546 (7th Cir. 2002) (African-American plaintiff cannot rely on Flores to skip the "legitimate expectations" prong of the prima facie case when the plaintiff was not in fact singled out for harsher discipline, as Caucasian employee who was similarly situated was punished in similar manner as the plaintiff).

### 2. **Similarly situated**

But even assuming plaintiffs could get past the "legitimate expectations" prong, either under a traditional prima facie format or a "singled out" theory, the court would still find plaintiffs have failed to establish that Johnson - the one and only non-minority case manager who received a raise based on his June 1999 performance evaluation - was similarly situated to them. To meet their burden of demonstrating Johnson was

-9-

"similarly situated," plaintiffs must show he was "directly comparable to [them] in all material respects." Grayson, 308 F.3d at 819. In cases like these where plaintiffs claim they were disciplined more harshly than a similarly situated employee based on some prohibited reason, plaintiffs must establish they were similarly situated in terms of performance, qualifications, and conduct. See Peele, 288 F.3d at 330.

Although plaintiffs go on at length about how Sweet treated them differently in matters like the demeaning way she allegedly spoke (or refused to speak) to them compared with the Caucasian case managers, incidents that took place after June 1999 or had nothing to do with the annual performance evaluations, and the opinions of coworkers regarding the workplace atmosphere, all of this is essentially irrelevant with respect to their claim that they were improperly denied a raise. *This* issue plaintiffs have largely ignored in their analysis of the similarly situated prong. That is, they have utterly failed to show Johnson was similarly situated to them in terms of their performance and conduct. Quite the contrary, the undisputed evidence shows Johnson was doing a much better job of following the new procedures and, as a result, received far less written memos and warnings from Sweet. (Balderrama LR 56.1(a) ¶¶ 96, 146, 155; Howell LR 56.1(a) ¶¶ 52, 54, 103) Plaintiffs admit Johnson did not have as many *documented* infractions but nevertheless claim he was equally guilty of not following procedure as they were.

(Howell LR 56.1(a) Pl. Resp. ¶ 52) None of the evidence plaintiffs point to, however, even remotely supports such an assertion. (Howell LR 56.1(b) ¶¶ 199, 200, 203, 207) Likewise, plaintiffs' and Johnson's own opinions about Johnson's performance are, once again, insufficient to create a genuine issue of fact. (Balderrama LR 56.1(a) ¶¶ 77, 157(f)(1); Balderrama LR 56.1(b) ¶¶ 184-86) To put it bluntly, plaintiffs offer absolutely no competent evidence that Johnson really had failed to follow procedure as often as they had, let alone that Sweet overlooked Johnson's, but not plaintiffs', poor performance. As the record thus stands, the bottom line is that Johnson did not violate the case management procedures nearly as frequently as Balderrama or Howell and he is, therefore, not similarly situated to them with respect to their performance during the relevant time period. For this reason, the court finds plaintiffs have not met their prima facie cases.

**B.  Pretext**

Alternatively, even assuming plaintiffs could satisfy their prima facie cases, the court finds they are not able to rebut as pretextual RRTC's legitimate, nondiscriminatory reason for denying them their raises – i.e., their many performance deficiencies. To prove pretext, plaintiffs must show RRTC's articulated reason (1) has no basis in fact; (2) did not actually motivate RRTC's decision; or (3) was insufficient to motivate its decision. See Grayson, 308 F.3d at 820.

The whole of plaintiffs' pretext analysis is spent criticizing Sweet's procedural changes to the case management system as impractical, impossible to carry out, and an utter failure. Because the new procedures were so flawed, plaintiffs argue, they gave Sweet free rein to discriminately discipline the minority case managers as a way to deny them their yearly raises. Not only do plaintiffs lack any factual support for such a theory, but they once again have missed the mark in trying to create a question of fact. As the Seventh Circuit has repeatedly emphasized, courts do not sit as super-personnel departments to question the prudence of an employer's business decisions; thus, plaintiffs' "self-serving quarrels" with the wisdom of Sweet's policies cannot establish pretext. Grayson, 308 F.3d at 820. Likewise, "no matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, Title VII does not interfere." Millbrook v. IBP, Inc., 280 F.3d 1169, 1181 (7th Cir.) (internal quotations, citations, and alterations omitted), cert. denied, 123 S. Ct. 117 (2002). So although plaintiffs arguably may be right that Sweet's changes to the case management procedures were illogical and foolish, questioning the prudence of those procedures gets them nowhere. What matters is that, as discussed above, the evidence shows Sweet applied the new procedures to everyone – both minority and non-minority case managers alike – uniformly. And, perhaps more importantly, plaintiffs have failed to

introduce any evidence to cast doubt over whether Sweet honestly believed plaintiffs, but not Johnson, had repeatedly violated the new procedures. Indeed, it bears repeating that plaintiffs themselves admit they were not following the new procedures. Plaintiffs' theory that the changes in procedure were simply a "set up" to deny them their yearly raises and to "get rid of the minority employees" is, therefore, completely unsupported by the record.

### IV. CONCLUSION

For the reasons stated above, RRTC's motions for summary judgment are granted. Cases 00 C 50148 and 00 C 50149 are dismissed in their entirety.

E N T E R:

_____
PHILIP G. REINHARD, JUDGE
UNITED STATES DISTRICT COURT

DATED: February 24, 2003

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Western Division

Marry Ann Howell

v.

Rock River Training Corp.

**JUDGMENT IN A CIVIL CASE**

Case Number: 00 C 50149

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■ Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that for the purposes of the Memorandum Opinion and Order dated February 24, 2003, this case is consolidated with case number 00 C 50148. Defendant's motions for summary judgment in cases 00 C 50148 and 00 C 50149 are granted. These two cases are dismissed in their entirety.

FILED-WD
03 FEB 24 PM 3:17
CLERK
U.S. DISTRICT COURT

Michael W. Dobbins, Clerk of Court

Date: 2/24/2003

Susan M. Wessman, Deputy Clerk